Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:20-CR-06009-SMJ-1 |
| v. | Government's Sentencing Memorandum |
| JUAN CARLOS SANDOVAL-GUERRERO, | |
| Defendant. | |

Plaintiff, United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Alison L. Gregoire, Assistant United States Attorney for the Eastern District of Washington, submits the following sentencing memorandum:

I.     STATEMENT OF FACTS

The investigation into Juan Carlos Sandoval-Guerrero commenced upon a complaint from a mother in Benton County, referred to herein as Victim Mother. She called to express concern regarding interactions her children, Victim B (age 9 at the time of the incident) and Victim C (age 11 at the time of the incident), had with a person she believed to be an adult over Xbox.

Sentencing Memorandum - 1

TFO Runge, Homeland Security Investigations, interviewed Victim Mother who explained, on November 1, 2019, she had come home and noticed that there were missed calls from a "Juan" on her son's (Victim C's) phone. When her children got home from school, she asked the boys who Juan was, and Victim B responded by saying that he was their friend from Xbox. Later when "Juan" called again, Victim Mother answered the phone and put it on speaker; an adult male (now known to be Defendant) was speaking. Victim Mother asked the adult male if he was Juan and the adult male said Juan was his son. Victim Mother asked the adult male how old he was, and he said he was 32. Victim Mother explained to law enforcement, Victim B was near when she was on the call, and she had it on speaker. Victim B confirmed that the adult male that was speaking on the phone call was the person he knew to be Juan. Victim Mother said that she spoke to both Victim C and Victim B about "Juan" and received information the boys had sent pictures to "Juan."

TFO Runge reviewed Victim B's phone and located nude or partially nude photographs and video of Victim B. Specifically, the images portrayed Victim B displaying his penis, masturbating his penis with his hand, and penetrating his anus with his finger. In some videos, Victim B can be seen wearing a wireless headset of the type that is typically associated with video game systems like Xbox. During one of the videos Victim B can be heard talking about the points he got on a game while he is masturbating his penis. The photographs and video had associated dates between October 09, 2019 and October 25, 2019.

Victim B and Victim C were forensically interviewed. TFO Runge was present for the interviews. Victim C stated that he and Victim B shared one account on Xbox and that they took turns talking to "Juan" over the headset. Victim C also admitted to talking to "Juan" on his phone via an application called, "TextNow." Victim C said that at first their conversations were about the game but

Sentencing Memorandum - 2

that they later turned to "pictures and stuff."

Victim B stated he began sending "Juan" nude photos at Juan's request. Juan would offer to buy Victim B in-game purchases on Fortnite (an Xbox game played online). Victim B said that "Juan" asked to video chat with Victim B and Victim B did. During the video chats, Victim B stated that Victim B was asked to masturbate by "Juan". Victim B would go into the bathroom, after his brother, Victim C, was asleep, and masturbate on camera, as requested.

Juan Carlos Sandoval-Guerrero was found to be residing at a specific address in Grandview, WA. On February 6, 2020, TFO Runge obtained a search warrant for that residence, which was executed the same day.

During the search, many electronic devices were seized. The seized items included two smart phones that were later determined to be Defendant's older phone and his new iPhone, which he had purchased about one month prior to the search warrant.

During the search, Defendant was located. He was subsequently transported to Grandview Police Department for interview. During the interview, having waived his Miranda rights, Defendant confessed to contacting Victim B through the video game "Fortnite." Defendant admitted that he requested and directed Victim B to produce several images and videos that Defendant would use to masturbate.

Defendant initially stated that he deleted all images but later admitted that he stored them under his Snapchat Account, which he had initially maintained on an old phone but later transferred to his new iPhone. Defendant indicated he maintained the photos under the password protected "For Your Eyes Only" section. Defendant voluntarily opened the "For Your Eyes Only" section on the phone and photographs and video of Victim B could be clearly seen.

Sentencing Memorandum - 3

II.   SENTENCING CALCULATIONS AND PSIR OBJECTIONS

The United States agrees with the PSIR calculations. The United States has no objection to the PSIR.

Defendant's total offense level is 43, criminal history category is I, and guideline range is thus "life," which is limited to 360 months total, given the 30 year statutory maximum for the count Defendant pled guilty to. Defendant is subject to a mandatory minimum of 15 years.

III.   SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

Defendant has no criminal history. ECF No. 82 at ¶ 79. However, the nature of the offense he pled to is incredibly serious. Defendant pled guilty to production of child pornography and attempt. ECF No. 82 at 1. The circumstances surrounding the offense involve Defendant's production and attempted production of child pornography images, attempted enticement of minors, and transfer of obscene material to minors. ECF No. 82 at ¶¶ 14-42.

Defendant met his victims playing Fortnite on Xbox and gained their trust, purchasing items in the game for them, and ultimately convincing them to send child pornography pictures to him. ECF No. 82 at ¶ 22. He told them not to tell anyone about the photos stating, "This is our secret." *Id.*

Defendant convinced Victim B to send him nude photos and explained to him how to masturbate so Victim B could send photos of that as well. ECF No. 82 at ¶ 25. Defendant stated he wanted to meet Victim B and asked where he lived and where he went to school. ECF No. 82 at ¶ 26.

Defendant sought child pornography from elementary aged children, was

Sentencing Memorandum - 4

confronted by their mother, and instead of ceasing the misconduct and deleting the images depicting the victimization, simply moved the child pornography images he had of the victims to another phone where he continued to maintain them. ECF No. 82 at ¶ 38 ("The defendant stated the original photos were sent to his Samsung Galaxy phone, but then transferred them to his new iPhone.").

The nature and circumstances of the offense are serious, and Defendant's characteristics, to include his response upon being confronted about the misconduct, is concerning a well.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks that the Court accept the government's recommendation and sentence Defendant to imprisonment for 15 years.  The government asks that the Court also order a lifetime term of supervised release.  Such a significant sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

The seriousness of the offense is perhaps best understood by the impact the offense has had on Defendant's young victims.  Victim B reflects that he is "sad a lot more" since the offense and does not like to talk about it because he feels "embarrassed and bad about" himself. ECF No. 82-1.  He also explains how his childhood has been directly impacted. He now has a more protective mother who will not let him spend the night at a friend's house. *Id*. He is mad all the time. *Id*.

Victim C explains he has trust issues because of the offense and went from chatting freely during online gaming to being afraid to "even listen" to anything online.  ECF No. 82-2.  He too explains that his parents are more protective now stating he cannot "talk or be online in any game unless it is for school or talking to friends," and even then, he is routinely checked on by his parents.  *Id*. He too

Sentencing Memorandum - 5

explains that he is a meaner and sadder person, and he feels to blame for what happened to him as well as what happened to his brother. *Id.* He feels dirty and gross for sending pictures in exchange for the Fortnite "gifts" Juan would send. *Id.*

    3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant chose to entice minors into producing and sending sexual photographs to him. Defendant tacitly acknowledged the illegality and of what he was doing, to include lying about who he was and claiming to delete the photos when he was confronted by the victims' mother, but he continued his behavior just the same. ECF No. 82 at ¶ 28 ("She asked the male if he was the defendant. He stated Juan was his son. . . . Victim B was near the phone and confirmed that the adult male that was speaking on the phone was the person he knew to be the defendant."); ECF No. 82 at ¶ 38 ("Initially the defendant stated he deleted the photos and video after the 'kid's' mother called him and threatened to call the police, but later admitted he stored them on his phone under his Snapchat account, under the section marked 'For Your Eyes Only.'").

Defendant also acknowledged the immorality of what he had done and acknowledged the impact of his actions when he was initially confronted by law enforcement. ECF No. 82 at 52 ("I hate myself for doing this I wish I never did this to your family.")[1]

The government believes 15 years, or the mandatory minimum sentence will support deterrence. The government, however, recommends a lifetime term of

---

[1] The United States asserts the evidence directly contradicts Defendant's evaluator's opinion that he did not know what he was doing could be characterized as an illegal act and did not realize his actions were any different than a video exchange between same aged minors. ECF No. 82 at ¶ 103.

Sentencing Memorandum - 6

supervised release.  The government is concerned by the recidivism rate for sex offenders generally.  *See* Dept. of Justice, Bureau of Justice Statistics, P. Langan, E. Schmitt, & M. Durose, *Recidivism of Sex Offenders Released in 1994*, p. 1 (Nov. 2003) (reporting that compared to non-sex offenders, released sex offenders were four times more likely to be rearrested for a sex crime, and that within the first three years following release 5.3% of released sex offenders were rearrested for a sex crime); *Smith v. Doe,* 538 U.S. 84, 104 (2003) ("The risk of recidivism posed by sex offenders is 'frightening and high.'") (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)).

The government also notes a lifetime term of supervised release is recommended for offenders, like Defendant. United States Sentencing Guideline §5D1.2(b) provides that the term in any event may not be less than the minimum term of years specified in paragraph (a), "and may be up to life" for "Sex offenses." An accompanying policy statement provides that if the "instant offense of conviction is a sex offense, ... the statutory maximum term of supervised release is recommended."

    4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The risk to the public from further crimes by Defendant is significant. Defendant has produced child pornography with young children located physically close to him.  Victim B provided the accurate name of his elementary school, in response to Defendant's questions. ECF No. 82 at ¶ 26. Upon being confronted by the mother of Victims B and C (and lying to her about his identity), on November 1, 2019, Defendant abated his production of child pornography with Victims B and C but chose to maintain the images despite being told law enforcement would be contacted.  ECF No. 82 at ¶ 38. Defendant is not easily deterred.

Sentencing Memorandum - 7

As has been detailed, Defendant's crimes are terribly serious. Defendant's sexual interest in minors and his willingness to seek out and use vulnerable minors makes him a real danger to the public. The government is asking the Court to sentence Defendant to 15 years of imprisonment. The government does maintain the public would be best protected if the Court were to order a lifetime term of supervised release.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training.

6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment. The offense to which Defendant pled guilty carries a mandatory minimum sentence of fifteen years imprisonment.

7. <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplate a term of imprisonment.

8. <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

Defendant is subject to a sentence like others similarly situated. The government is aware that the requested sentence requires a very substantial downward variance from the Guideline range. The government notes, however, Defendant admitted his misconduct nearly immediately, upon being confronted by

law enforcement. ECF No. 82 at ¶ 38. He pled guilty promptly. ECF No. 82 at 3. Additionally, while not an excuse, Defendant is a very young person who will stand before the Court for sentencing at approximately 21 years and 9 months of age. ECF No. 82 at 2. His young life will now be placed on an entirely different trajectory, as he is almost assured to lose his permanent resident status and be deported to Mexico upon completion of his prison term. ECF No. 82 at ¶ 91. Given all the unique circumstances of the case, though the misconduct is exceptionally serious, the government does not believe the recommended 15 years of confinement will serve to generate a sentencing disparity. The government continues to endorse a sentence to 15 years of imprisonment and a lifetime term of supervised release.

## IV. RESTITUTION, FINES, AND ASSESSMENTS

The Court should impose mandatory restitution, no fine, and no $5,000 special assessment in accordance with the Justice for Victims of Trafficking Act 2015 (JVTA) (18 U.S.C. § 3014(a)), based on a finding of indigency, and no assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA).

### A. Restitution

Restitution is mandatory pursuant to 18 U.S.C. §§ 2259 and 3663A. The Court should order that Defendant pay restitution in the full amount sought by Victim A and Victim B. *See* 18 U.S.C. 2259(c) ("For purposes of this section, the term 'victim'" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age,

incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.").

Compensation for "long term effects of [a victim's] abuse" is specifically contemplated by the statutes. *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999). Prospective losses (such as future counseling costs, future lost income) are clearly recoverable. *See, e.g., United States v. Doe*, 488 F.3d 1154, 1160-62 (9th Cir. 2007); *United States v. Osman*, 853 F.3d 1184, 1188 (11th Cir. 2017).

In this case, the United States seeks $26,520 for Victim B and $26,520 for Victim C, for future counseling costs, for a total of $53,040. ECF No. 82-3. The costs have been substantiated by Anna M. Hahn, M.Ed., LMHC, to a reasonable certainty. *Id.; see Laney,* 189 F.3d at 967 n.14 (upholding the district court's restitution award because it was a reasonable estimate and was not based on arbitrary calculations). These future counseling costs do not have to be calculated with mathematical precision, provided the losses are not arbitrarily accounted for, but instead are based on a reasonable estimate. *United States v. Doe*, 488 F.3d 1154, 1159-1160 (9th Cir. 2007).

Pursuant to 18 U.S.C. § 3664(f)(2), (3), the Court must specify the manner in which payment of the restitution is made based on the Defendant's assets and obligations and may order the Defendant to make a single, lump-sum payment immediately upon sentencing.

B.   Fines

The government is not seeking a fine.

C.   JVTA Assessment

Pursuant to 18 U.S.C. § 3014(a)(3), the Court shall impose a $5,000 JVTA assessment against the Defendant for his conviction for an offense under Chapter

Sentencing Memorandum - 10

110. There is, however, an exception to the JVTA assessment for indigence, which does seem to be applicable here.

### D. AVAA Assessment

Pursuant to 18 U.S.C. § 2259A, in addition to any other criminal penalty, restitution, or special assessment authorized by law, the Court shall assess not more than $50,000 on any person convicted of a child pornography production offense. In determining the assessment under subsection (a), the Court shall consider the factors set forth in sections 3553(a) and 3572. The United States is asking for substantial restitution on behalf of the victims. Defendant is of limited means. ECF No. 82 at ¶ 112. The United States asks that no additional assessment be ordered pursuant to 18 U.S.C. § 2259A.

### V. GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the court impose a sentence to 15 years imprisonment as well as a lifetime term of supervised release. The government notes restitution is mandatory, and the government seeks $26,520 for Victim B and $26,520 for Victim C.

Respectfully submitted this 22nd day of June 2021.

        Joseph H. Harrington
        Acting United States Attorney

        *s\ Alison L. Gregoire*
        Alison L. Gregoire
        Assistant United States Attorney

I hereby certify that on June 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Jeremy B. Sporn, counsel for Defendant.

<u>s\ Alison L. Gregoire</u>
Alison L. Gregoire
Assistant United States Attorney
United States Attorney's Office
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767