Jeremy B. Sporn
Federal Defenders of Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920

Attorneys for the Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable SALVADOR MENDOZA, JR.

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>     v.<br><br>Juan C. Sandoval-Guerrero,<br><br>                Defendant. | Case No. 4:20-cr-6009-SMJ<br><br>**Defendant's Objections to<br>Draft PSR**<br><br>Richland - With Oral Argument<br><br>July 29, 2021, at 10:15 a.m. |

The defendant, Juan C. Sandoval-Guerrero, respectfully submits the following objections to the draft Pre-Sentence Investigation Report. The PSR mistakenly applies two guideline enhancements that should be stricken and ought not be a part of Mr. Sandoval-Guerrero's Guideline calculation. First, it applies a distribution enhancement in direct contravention of the Guidelines' explicit caution. Second, it concludes that the offense involved the commission of a sexual act or sexual contact. But purely masturbatory conduct does not meet those definitions, whatever the age of the victims and whatever power imbalance or other disturbing facts might exist. They should be

Defendant's Objections to Draft PSR

stricken, and Mr. Sandoval-Guerrero's guideline calculation – still exceedingly high – should fall accordingly.

**The Distribution Enhancement Should Not Apply**

The PSR calculates in Paragraph 58 that two levels should be added to the adjusted offense level because "the defendant engaged[1] in distribution" of proscribed, sexually explicit material. U.S.S.G. § 2G2.1(b)(3). Mr. Sandoval-Guerrero did not distribute or engage in distribution. The Guidelines commentary recommends that the enhancement applies, among other ways, if the defendant, "aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution." U.S.S.G. §2G2.1 cmt. App. n. 3. It likewise comes to the same conclusion if the defendant "knowingly committed the distribution" or conspired to do so. *See id*. He did none of these things.

As a term of art, "distribution" is defined earlier in the Guidelines commentary to mean "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing *but*

---

[1] The enhancement applies only where the defendant *knowingly* engaged in distribution, U.S.S.G. § 2G2.1(b)(3), although its applicability in this case does not turn on whether the defendant's conduct was knowing or not.

Defendant's Objections to Draft PSR

*does not include the mere solicitation of such material by a defendant.*" U.S.S.G. § 2G2.1(b)(3) cmt. App. n. 1 (emphasis added).

Solicitation of such material by the defendant in this case describes the offense. That is what Mr. Sandoval-Guerrero did – he got a minor to take explicit photos or video of himself, and send them to him. There is nothing more here, and none of the type of distribution-related conduct that the application note envisions. Therefore, because Mr. Sandoval-Guerrero's conduct falls within the exemption from distribution in the Guidelines, the enhancement for distribution should not apply.

This position, plain enough in the text itself, is also supported by the case law. Where the enhancement was successfully upheld, the defendant's or co-defendants' conduct went above and beyond mere solicitation. *See, e.g.*, *United States v. Schuster*, 706 F.3d 800, 803-05 (7th Cir. 2013) (defendant properly received distribution enhancement after he admitted to sending the pornographic images to the person who requested them and evidence showed that he prepared them for distribution, including personalized notes to the intended recipients); *United States v. Broxmeyer*, 699 F.3d 265, 282-83 (2d Cir. 2012) (upholding enhancement where defendant not only received images that the victim produced, but "further sought to distribute the images to other minors in order to induce the production of still more child pornography"); *United States v. Odom*, 694 F.3d 544, 548 (5th Cir. 2012) (holding that enhancement applied where co-defendant admitted to allowing other adults to view the images at issue, which was fairly attributable to Odom as

Defendant's Objections to Draft PSR

relevant conduct); *United States v. Holt*, 408 Fed. Appx. 229, 239 (11th Cir. 2010) (finding that distribution enhancement applied properly where defendant showed pictures of sexually explicit conduct on his cell phone to third parties since distribution can involve various methods of transfer, including displaying content to a third party by cell phone camera and thus involved "more than mere solicitation of the material by the defendant (which is not distribution)"). As troubling as it was, Mr. Sandoval-Guerrero did not engage in that type of conduct.

   Even those cases were applying the distribution enhancement as it was written at the time, that is, whether "the offense involved distribution." That standard is less friendly to a defendant than the one that now exists, which turns on whether *the defendant* "knowingly engaged in distribution." That change, discussed in U.S.S.G. Amendment 801 (Nov. 1, 2016), follows the Guidelines' overall restriction on relevant conduct in Chapter 1B1.3 that was made in 2015, following the adoption of Amendment 790. Thus, even if there were a time when this offense "involved" distribution, the standard the Court now applies at sentencing is more restrictive and focuses more on the defendant's conduct. But either way, since the definition of distribution specifically exempts the defendant's "mere solicitation," the enhancement does not apply. And from a more conceptual or theoretical standpoint, even where appropriately applied as a matter of Guidelines' interpretation, sending the images to Mr. Sandoval-Guerrero, the purported basis for its application, "is no appreciable increment to the evil of the offense: Why

Defendant's Objections to Draft PSR

indeed would [the defendant] solicit a self-photograph from [the victim] unless he wished to receive it?" *Broxmeyer*, 699 F.3d at 300 (Jacobs, C.J., dissenting).

For these reasons, and because Mr. Sandoval-Guerrero did not engage in distribution other than soliciting the proscribed images (the very basis for the charge), the distribution enhancement should be stricken from the Guideline calculation, and the advisory range should fall accordingly.

**The Enhancement For Sexual Acts or Sexual Contact Should Not Apply**

Second, the draft PSR applies an enhancement because the conduct involved the commission of a sexual act or sexual contact. PSR ¶ 57; U.S.S.G. § 2G2.1(b)(2)(A). Again, this is mistaken, and it did neither. It identifies the solicitation of images involving masturbation and the digital penetration of the anus. *Id.* The PSR does not specify whether it applied the enhancement on the basis of a purported sexual act or sexual conduct, but this makes little difference, as the conduct does not meet the definition of either.

By way of background, the factual basis for the offense of producing images of child pornography does not, by itself, trigger the enhancement in question. In most cases, and certainly for those with more disturbing content than here, there is little question that the images in question depict a sexual act or sexual contact. But not here, in this type of narrow subset of production cases. The term "sexually explicit conduct" as it is defined for production of child pornography charges, is substantially broader than either a sexual

Defendant's Objections to Draft PSR

5

act or sexual contact. *See* 18 U.S.C. §§ 2251(a) & 2256(2)(A). Sexually explicit conduct is expressly defined to include masturbation and lascivious exhibition of the genitals. This is why the conduct at issue creates a factual basis for the statutory violation, even while it does not permit application of the more narrowed guideline enhancement.

The relevant Guideline commentary first defines "sexual act" by reference to the definition in Section 2246(2):

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

The images in question in this case do not meet any of these definitions of sexual act. Subsections (A) and (B) are plainly inapplicable; nothing like that occurred. Subsections (C) and (D) come closer to describing the conduct, but likewise do not apply. They both feature the key phrase "of another" or "of another person who has not attained the age of 16 years." This necessarily excludes acts –penetration or intentional touching – that one performs on oneself. Under the definition, Person A would need to

penetrate or touch Person B. This, therefore, does not apply to the type of masturbatory images that Mr. Sandoval-Guerrero solicited.

Nor, for largely the same reasons, do such acts qualify as sexual contact. Contact, by definition, requires two entities or subjects. As a descriptive noun, the word carries many different meanings, whether "union or junction of surfaces," "association or relationship," "connection or communication," "a "person serving as a go-between, messenger, connection or source of special information[2]". We see this above, in subsections (A) and (B) as to what constitutes a sexual act: *contact* between certain bodily parts of the perpetrator and victim. *See* 18 U.S.C. § 2246(2).

The Guideline definition of "sexual contact" meanwhile, adopts the definition in 18 U.S.C. Section 2246(3), meaning the: "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." It does not say that touching oneself qualifies as sexual contact, and for good reason: it is not *contact* between two parties or entities or subjects.

True, it uses the term "any person" and unlike the "sexual act" definition above, does not refer to "another" or "another person." However, the meaning of this

---

[2] https://www.merriam-webster.com/dictionary/contact?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

Defendant's Objections to Draft PSR

phraseology should not be misconstrued; it does not sanction its application when the person touches himself or herself only. Instead, that means that sexual contact exists when one person touches any other person. For example, if Person A (the defendant) gets Person B (someone else, or a minor) to touch Person C (another minor), with the intent to gratify Person A's sexual desire, the definition would rightly not permit Person A to escape application of this enhancement or prosecution just because he was not present or did not perform the touching. Therefore, there is merit in a broad definition to cover these types of scenarios (which unfortunately occur with regularity).

It is concededly, a closer call than with respect to whether the conduct qualifies as a sexual act. But the broadness or flexibility of "sexual contact" does not extend as far as the Probation Department and the Government would have it here. The Ninth Circuit does not appear to have reached this issue previously.

The reason that "sexual act" limits its definition to "another" or "another person" is that without such qualifications, touching oneself could otherwise be considered a sexual act. And the Commission sought to exclude such conduct from the prevailing definition of sexual act. But where the term at issue is sexual contact, it had no need to use such limiting language, because as set forth above, contact, by definition, would require two persons. Furthermore, Congress or the Commission could have included masturbation in its definition of "sexual contact" as it did expressly in defining "sexually explicit conduct." *See* 18 U.S.C. § 2256(2)(A)(iii). It also could have included

Defendant's Objections to Draft PSR

8

the term "of one's self" so as to include "the intentional touching . . . of the genitalia of any person or of one's self[.]" But it did neither of those things, and the Court should not read them into the statute as if it had.

And there is good reason the Commission would seek to punish more harshly those defendants who physically engage in sexual acts or sexual contact with minors than those, like Mr. Sandoval-Guerrero, who effectuate production remotely, without ever meeting or engaging in any physical contact. The distinction may be largely irrelevant for purposes of statutory liability, but the same is not true for differentiating culpability and length of imprisonment, and the gradations of punishment that Guideline enhancements are supposed to represent.

Finally, even if the Court disagrees with Mr. Sandoval-Guerrero and finds the provision is ambiguous, lenity prevents the resolution of such ambiguity against the defendant. *See United States v. Edling* 891 F.3d 1190, 1195-96 (9th Cir. 2018). He should and will pay a very significant price for his own actions; but that price should not be lengthened or made more severe by the Sentencing Commission's use or adoption of ambiguous terms without clarification.

The Guideline is plenty high without those enhancements (almost at the statutory maximum, even without them). These enhancements are examples of why the Guidelines have lost so much respect from Judges and others over the years, and why

Defendant's Objections to Draft PSR

9

they, especially this Guideline in particular, should be accorded so little deference under these circumstances.

### Mr. Sandoval-Guerrero's Interview Statements Require Further Contextualization

Third, we believe that to the extent Mr. Sandoval-Guerrero's statements made in a post-arrest interview with law enforcement are reported in Paragraphs 38-39, they should contain the additional proviso that the interview was made under duress and intimidation. We attach video and audio recordings as Exhibit A for the Court's benefit to review the environment in which Mr. Sandoval-Guerrero made the statements in question or assented to the interviewer's demand. Frankly, the interview is painful and embarrassing to watch. Certainly the subject matter is troubling, but that should not excuse the detective's conduct in intimidating and frightening a scared, confused child just arrested for the first time in his life. It was a fish out of water experience, and it shows.

Dr. Klein's psychological report [attached to the Sentencing memorandum filed separately] indicates that Mr. Sandoval-Guerrero likely did not understand or appreciate that he had the right to remain silent and decline to answer questions. Dr. Klein opines:

> He is not cognitively sophisticated. He had been taught by his mother to respond politely and fully to all authority figures: at school, at his jobs, and even to the parents of the various girlfriends he has had over the years. He had never been taught to withhold information from authority figures and had no idea there was such a thing as a right to not answer questions posed directly to him by a professional in an authoritative

Defendant's Objections to Draft PSR

position. Generally speaking, he tries to please high status persons and is fearful of displeasing them.

Ignorance of one's *Miranda* rights does not mean that the answers supplied are necessarily dubious or inaccurate. But here, Mr. Sandoval-Guerrero's youth and disposition are intertwined. And reviewing the recorded interview with law enforcement, it is difficult to come to any other conclusion but that Mr. Sandoval-Guerrero eventually accommodated and went along with whatever the detective's theories were simply to avoid confrontation and bring an unpleasant situation to an end. Whereas he started out in denial and mostly minimizing his own conduct, by the end, he was going along with whatever was asked. He was effectively worn down, and lacked the fortitude or wherewithal to continue to stand up to the detective's blusterous bullying.

Thus, there is good reason to question whether some of the statements in Paragraphs 38-39 are what Mr. Sandoval-Guerrero actually did or said, that is, genuine expressions of his inclinations and activities, or what he simply said to get the detective off his back and bring the interrogation to an end. It is bravado, bullying, and manipulates the coercive machinery of the state. The interview manifests a tremendous power imbalance that the detective exploits expertly, combined with all the righteous fury of moral superiority over a suspected sex offender. None of this is to excuse or mitigate Mr. Sandoval-Guerrero's own conduct. The point is that the environment in

Defendant's Objections to Draft PSR

which his admissions were made did not necessarily foster truth and accuracy in his responses. The underlying dynamic was one of fear, manipulation and intimidation.

Lastly, Mr. Sandoval-Guerrero objects to the inclusion of allegations in Paragraphs 71-74 as to irrelevant conduct. The allegations are not a part of the offense conduct; they do not concern what is charged in the indictment. And they are not relevant conduct. As such, they should be stricken, and the Court can form a fulsome view of Mr. Sandoval-Guerrero and the offense conduct without them.

Dated:   July 1, 2021

                                        Respectfully submitted,

S/Jeremy B. Sporn
Jeremy B. Sporn, NY 4779310
Attorneys for Juan C. Sandoval-Guerrero
Federal Defenders of
Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
Email: Jeremy_Sporn@fd.org

Defendant's Objections to Draft PSR

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: ALISON GREGOIRE, Assistant United States Attorney.

<u>S/Jeremy B. Sporn</u>
Jeremy B. Sporn, NY 4779310
Attorneys for Juan C. Sandoval-Guerrero
Federal Defenders of
Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
Email: Jeremy_Sporn@fd.org

Defendant's Objections to Draft PSR